**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES AUSTIN, | ) | CASE NO. 1:21-CV-00922-DAR |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN CHARMAINE BRACY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I. Introduction

James Austin ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is an Ohio prisoner who is currently serving an aggregate prison term of eight years for aggravated burglary, kidnapping, intimidation of a crime victim or witness, having weapons while under disability, and carrying a concealed weapon. (ECF No. 1, PageID #: 1; ECF No. 11-1 at Ex. 6). Petitioner now asserts fourteen grounds for relief. (ECF No. 1, PageID #: 9-51). Respondent, Warden Charmaine Bracy, filed a return of writ on October 6, 2021. (ECF No. 11). Petitioner filed a traverse on March 3, 2022. (ECF No. 20).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Austin's petition and other case-dispositive motions. Because all Petitioner's grounds are non-cognizable, procedurally defaulted, or meritless, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.     Factual Background

The Ohio Court of Appeals for the Eighth Appellate District set forth the following facts[1]

on appeal:

> On August 16, 2016, Petitioner was charged with aggravated burglary, kidnapping, aggravated robbery, robbery, intimidation of a crime victim or witness, carrying concealed weapons, improperly handling firearms in a motor vehicle, receiving stolen property, and having weapons while under disability. In the midst of a jury trial, as part of a negotiated plea deal, Petitioner retracted his former not guilty pleas and pled guilty to two counts of aggravated burglary, one count of kidnapping, two counts of intimidation of a crime victim or witness, one count of having weapons while under disability, and one count of carrying concealed weapons. The remaining counts were dismissed, and the court proceeded immediately to sentencing. On June 19, 2017, the court imposed an aggregate eight-year sentence.

*State v. Austin*, 2020-Ohio-26, ¶ 2, *appeal not allowed*, 2020-Ohio-1634, ¶ 2.

## III.    Relevant State Procedural History

### A.  Indictment, Trial, Guilty Plea, and Sentencing

A grand jury indicted Austin on August 16, 2016 for three counts of aggravated burglary

(Counts 1, 5, and 12); three counts of kidnapping (Counts 2, 6, and 13); three counts of aggravated

robbery (Counts 3, 7, and 14); three counts of robbery (Counts 4, 8, and 15); two counts of

intimidation of a crime victim or witness (Counts 9 and 16); five counts of having weapons under

a disability (counts 10, 17, 19, 20, and 24); and one count each of breaking and entering (Count

11); grand theft (Count 18); improperly handling firearms in a motor vehicle (Count 21); carrying

a concealed weapon (Count 22); and receiving stolen property (Count 23). (ECF No. 11-1 at Ex.

1). Petitioner pleaded not guilty to all counts on August 19, 2016. (*Id.* at Ex. 2).

The case proceeded to trial on June 12, 2017. (ECF No. 11-2 at 38). However, while Austin

was being cross-examined after testifying in his own defense, the prosecutor announced that

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

pursuant to a plea agreement, Austin wished to plead guilty to an amended indictment in exchange

for an eight-year agreed sentence. (ECF No. 11-4 at 400). On June 15, 2017, Austin pled guilty to

Counts 1, 5, 6, 9, 10, 16, and 22 and the court sentenced him to eight years in prison followed by

five years post release control. (ECF No. 11-1 at Ex. 6).

### B.  Direct Appeal

Austin filed a notice of appeal with the Eighth District Court of Appeals on July 11, 2017.

(ECF No. 11-1 at Ex. 7). Austin raised a single assignment of error on appeal:

> The plea bargain must be vacated or specifically enforced because the appellant
> was promised an eight year sentence, which the Court agreed to enter, and the Court
> instead of honoring that agreement imposed eight years plus five years of Post
> Release Control. Appellant's guilty pleas were thus not knowingly, voluntarily and
> intelligently entered and Crim R 11 was violated as well as the Fifth, Sixth and
> Fourteenth Amendments of the federal Constitution; Santobello v. New York, 404
> U.S. 257 (1971).

(*Id.* at Ex. 12). The State filed a response brief on December 20, 2018. (*Id.* at Ex. 13). On May 23,

2019, the appellate court rejected Petitioner's assignment of error and affirmed his convictions and

sentence. (*Id.* at Ex. 14). Austin did not appeal this decision to the Supreme Court of Ohio.

### C.  Motion to Withdraw Guilty Plea and Related Proceedings

On December 12, 2017, while his direct appeal was still pending, Austin filed a motion to

withdraw his guilty pleas in the trial court. (ECF No. 11-1 at Ex. 15). Austin argued that the

prosecutor "deliberately intentionally and willfully suppressed and/or withheld favorable evidence

from the defendant." (*Id.*). The trial court denied the motion without hearing on April 2, 2018. (*Id.*

at Ex. 16). Austin appealed the denial. (*Id.* at Ex. 17). The State conceded that the trial court erred

in denying the motion because the trial court lacked jurisdiction due to Austin's pending appeal of

his conviction. (*Id.* at Ex. 20). Accordingly, on September 6, 2018, the appellate court reversed the

3

decision and remanded the matter to the trial court with instructions to hold Austin's motion in abeyance until the direct appeal was decided. (*Id.* at Ex. 22).

After the appellate court denied Austin's motion for reconsideration, he filed a notice of appeal to the Supreme Court of Ohio. (*Id.* at Exs. 24, 25). Austin raised a single proposition of law:

> DOES A TRIAL COURT RETAIN JURISDICTION OF OVER POSTTRIAL MOTIONS PERMITTED BY THE OHIO RULES OF CRIMINAL PROCEDURE DURING THE PENDENCY OF AN APPEAL ON UNRELATED ISSUES?

(*Id.* at Ex. 26). The Supreme Court of Ohio declined to accept jurisdiction on December 26, 2018. (*Id.* at Ex. 27).

After remand, Austin moved to dismiss his motion without prejudice on March 8, 2019. (*Id.* at Ex. 36).

### D.  Post-Conviction Petition and Related Proceedings

On November 13, 2018, Austin filed a pro se petition for post-conviction relief in the trial court. (ECF No. 11-1 at Ex. 29). Austin asserted seven claims for relief:

> 1. Defendant was denied due process of law under the Ohio and U.S. Constitutions when the State used false evidence against him during trial proceedings in order to obtain his guilty plea.
>
> 2. Petitioner was denied the effective assistance of counsel due to counsel's withholding of exculpatory evidence from Petitioner and counsel's failure to introduce exculpatory evidence resulting in his being compelled to take a guilty plea that was not intelligently or knowingly made.
>
> 3. Petitioner was denied the effective assistance of counsel due to counsel's failure to call material witness Corporal James Ford at Petitioner's trial resulting in his being compelled to take a guilty plea.
>
> 4. Petitioner was denied the effective assistance of counsel due to counsel's failure to call material witness Jeremy Smith at Petitioner's trial resulting in his being compelled to take a guilty plea.
>
> 5. Petitioner was denied the effective assistance of counsel due to counsel's failure

to investigate, obtain, and introduce/present exculpatory evidence resulting in Petitioner being compelled to take a guilty plea.

6. Petitioner was denied the effective assistance of counsel due to counsel's failure to investigate and introduce exculpatory evidence resulting in his being compelled to take a guilty plea.

7. Petitioner was denied the effective assistance of counsel due to counsel's manipulating, misleading, and false advice pressuring Petitioner to accept a plea.

(*Id.*). On December 31, 2018, the trial court denied the petition because Austin had "failed to timely file the petition" or "establish a basis under R.C. 2953.23(A)(1) for the Court to consider an untimely petition" and because "the claims asserted in the petition could have been raised at trial or on direct appeal and are therefore res judicata." (*Id.* at Ex. 30).

Austin filed a notice of appeal on January 24, 2019. (*Id.* at Ex. 31). In response to Austin's brief, the State conceded that Austin's petition was timely such that the trial court erred in dismissing it. (*Id.* at Ex. 33). Accordingly, the appellate court reversed the decision and remanded to the trial court for consideration on the merits. (*Id.* at Ex. 35).

Following remand, the State moved for summary judgment on Austin's petition. (*Id.* at Ex. 37). After Austin filed a reply, the trial court granted the State's motion for summary judgment on November 12, 2019. (*Id.* at Exs. 38, 39).

Austin filed a notice of appeal on December 6, 2019. (*Id.* at Ex. 40). Austin raised six assignments of error:

1. The trial court erred in denying Appellant's petition when it failed to address and give Finding of Facts and Conclusions of Law as to the issue of the falsified evidence and testimony presented at Appellant's trial which Appellant's raised in his petition.

2. The trial court erred in applying the *res judicata* doctrine to deny Appellant's petition as the issues raised in Appellant's petition was *de hors* the record and therefore could not have been has in his direct appeal. *Res judicata* is inapplicable to the issues raised in Appellant's petition.

3. The trial court erred in denying Appellant's claim that his trial counsel was constitutionally ineffective for withholding exculpatory evidence from Appellant and failing to present such evidence during trial.

4. The trial court erred in denying Appellant's claim that his trial counsel was constitutionally ineffective for failing to subpoena and call material witnesses, Cpl. James Ford and Jeremy Smith, during Appellant's trial which compelled Appellant to accept a reprehensible plea.

5. The trial court erred in denying Appellant's claim that his trial counsel was constitutionally ineffective for failing to investigate, obtain, and present exculpatory evidence of trail camera footage of the alleged crime.

6. The trial court erred in denying Appellant's claim that his trial counsel was constitutionally ineffective for failing to investigate, obtain, and present exculpatory evidence of trail camera footage of the alleged crime.

(*Id.* at Ex. 41). The State filed a response on February 21, 2020, and Austin filed a reply on March 2, 2020. (*Id.* at Exs. 42, 43). The appellate court affirmed the decision on December 24, 2020. (*Id.* at Ex. 44).

On January 14, 2021, Austin filed a "Motion for the Court to take Judicial Notice of Pertinent Facts," asserting that he "did not find out that the petition was denied until January 7, 2020, well after the time due to file the motion for reconsideration" and he had not received a copy of the decision to allow him to appeal to the Supreme Court of Ohio. (*Id.* at Ex. 45). The appellate court denied the motion on April 20, 2021. (*Id.* at Ex. 46).

### E.  Rule 26(B) Application and Related Proceedings

On August 14, 2019, Austin filed a "Motion to Take Judicial Notice" in the appeals court, asserting that he had been transported to the Cuyahoga County Justice Center and was unable to complete his Rule 26(B) application to reopen by the August 21, 2019 deadline. (*Id.* at Ex. 47). Accordingly, he requested that the court hold his application in abeyance and allow him to file it at a later date. (*Id.*). The appellate court denied the motion on August 15, 2019 because "[t]he proper place for appellant to argue good cause in his application for reopening [is] in the

6

application itself." (*Id.* at Ex. 48).

Austin filed his Rule 26(B) application to reopen on October 24, 2019. (*Id.* at Ex. 49).

Austin raised the following assignments of error:

> *Assignment of Error One:* Appellant was denied effective assistance of appellate counsel due to counsel's failure to argue that appellant was denied due process when his plea was not knowing, voluntarily, and intelligently made related to the inadequate explanation of post-release control.

> *Assignment of Error Two:* The trial court erred to the prejudice of Appellant when it failed to adequately inform Appellant of the constitutional rights waived as a result of a guilty plea.

> *Assignment of Error Three:* Appellant was denied effective assistance of appellate counsel due to counsel's failure to argue that appellant was denied due process when his plea was not knowing, voluntarily, and intelligently made related to the inadequate explanation of post release control and the nature and number of the charges prior to the acceptance of the plea; specifically count nine.

> *Assignment of Error Four:* Appellant did not receive the effective assistance of counsel when counsel failed to appeal the issue of the plea having never been properly accepted, prior to sentencing, by the trial court.

> *Assignment of Error Five:* Appellant did not receive the effective assistance of counsel when counsel failed to appeal the issue of the plea having never been properly accepted, prior to sentencing, by the trial court.

(*Id.*). Austin also filed a motion for leave to file an untimely application, asserting that he was "inexplicably transferred from Trumbull Correctional Institution (TCI) to the Cuyahoga County Jail (CCJ) on 8/6/2019;" he was held at CCJ for twenty days without explanation or access to his legal materials such that he was unable to complete his application; and he had attempted to seek an explanation from the trial court for the transfer. (*Id.*). The State filed a response on November 25, 2019. (*Id.* at Ex. 50). On January 8, 2020, the appellate court denied Austin's Rule 26(B) application as untimely. (*Id.* at Ex. 52).

After the appellate court denied Austin's motion for reconsideration, he filed a notice of appeal with the Supreme Court of Ohio. (*Id.* at Exs. 53, 54, 55). Austin raised the following

propositions of law:

> Proposition of Law No. 1: Appellant was denied due process of law and fundamental fairness when he was prevented from the timely presentment of his App.R. 26(B) Application for Reopening his Appeal addressing the constitutional issue of ineffective assistance of counsel due to the trial court's multiple errors and the appellate court's refusal to recognize good cause for the untimely filing.

> Proposition of Law No. 2: Was Appellant denied constitutional due process and fundamental fairness when his Application to Reopen his appeal was denied as untimely due to the trial court's failure to address his motions pertinent to the timeliness of the filing and due to the trial court preventing Appellant from obtaining the documentation needed to support the showing of good cause in the timely presentment of his App.R. 26(B) Application for Reopening his Appeal?

(*Id.* at Ex. 56). On April 28, 2020, the Supreme Court of Ohio declined to accept jurisdiction. (*Id.* at Ex. 57).

## IV.    Federal Habeas Corpus Petition

On April 23, 2021, Austin filed a federal petition raising fourteen grounds for relief:

**GROUND ONE:** Appellant was prejudicially delayed from filing of his App.R.26 (B) application for reopening by the trial court's abrupt, inexplicably, and still unexplained transfer resulting in the denial of the application.

**GROUND TWO:** Appellant was denied effective assistance of appellate counsel due to counsel's failure to argue that appellant was denied due process when his plea was not knowing, voluntarily, and intelligently made related to the inadequate explanation of post-release control and the nature and number of the charges prior to the acceptance of the plea; specifically count nine.

**GROUND THREE:** Appellant was denied effective assistance of appellate counsel due to counsel's failure to argue that appellant was denied due process when his plea was not knowing, voluntarily, and intelligently made related to the inadequate explanation of post-release control.

**GROUND FOUR:** The trial court erred to the prejudice of Appellant when it failed to adequately inform Appellant of the constitutional rights waived as a result of a guilty plea.

**GROUND FIVE:** Appellant did not receive the effective assistance of appellate counsel due to counsel's failure to appeal the issue of the plea having never been properly accepted, prior to sentencing, by the trial court.

**GROUND SIX:** Appellant did not receive the effective assistance of appellate counsel due to counsel's failure to appeal the issue of the plea having never been properly accepted, prior to sentencing, by the trial court.

**GROUND SEVEN:** In a post-conviction, should a trial court be required to address every constitutional violation raised by the Petitioner.

**GROUND EIGHT:** The State withheld Brady evidence prior to Appellant's jury trial while at the same time offering an unauthentic—fabricated—version of the evidence at issue and false testimony during trial, resulting in Appellant's acceptance of the state's plea offer, due to his inability to defend against the state's use of false evidence and perjured testimony, and therefore rendering the plea involuntarily and unintelligently made.

**GROUND NINE:** Does the State's use of false/unauthenticated evidence and perjured testimony constitute grounds for relief pursuant to R.C. 2953.21 when the evidence and testimony at issue along with the unsound advisement of trial counsel, resulted in Appellant's acceptance of the state's plea offer, due to his inability to defend against the state's use of false evidence and perjured testimony, whereas had it not been but for the evidence and testimony at issue Appellant would have insisted on continuing his jury trial and allotted the jury to render an untainted verdict worthy of having produced a just result.

**GROUND TEN:** Is a new trial the appropriate remedy to correct the improper acceptance of a compelled and pressured plea due to the petitioner's inability to defend against the State's use of false evidence and perjured testimony, during his jury trial, in order to gain an advantage in securing a tainted and unjust conviction.

**GROUND ELEVEN:** Was Appellants trial counsel was constitutionally ineffective for failing to investigate, obtain, and present exculpatory evidence of trail camera footage of the alleged crime, withholding exculpatory evidence from Appellant and failing to present such evidence during trial, and failing to subpoena and call material witnesses, Cpl. James Ford and Jeremy Smith, during Appellant's trial which compelled Appellant to accept a reprehensible plea.

**GROUND TWELVE:** The trial and appellate court erred in applying the *res judicata* doctrine to deny Appellant's petition as the issues raised in Appellant's petition was *de hors* the record and therefore could not have been has [sic] in his direct appeal. *Res judicata* is inapplicable to the issues raised in Appellant's petition.

**GROUND THIRTEEN:** For the purposes of fair and equal opportunity of Due process and sufficient operative argument and presentation of fact and evidence, should oral arguments in a petition for post-conviction relief be allowed where the Appellant is operating pro se and has been denied the request for appointment of counsel?

**GROUND FOURTEEN:** The appellate court failed the [sic] timely send notice of its ruling of Petitioner's postconviction appeal prejudicially limiting Petitioner's timing and ability to appropriately execute his appeal causing an untimely filing to the Ohio Supreme Court.

(ECF No. 1 at PageID #: 9, 11, 13, 15, 18, 20, 22, 25, 29, 34, 39, 43, 47, 50).

## V.  Legal Standards

### A.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge their custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### B.  Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief. 28 U.S.C. § 2254(b) and (c)." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12

(N.D. Ohio Feb. 12, 2007). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F.Supp.2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id.* (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### C. Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28, 102 S. Ct. 1558, 1570, 71 L. Ed. 2d 783 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas

review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### D.  AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

15

**VI.  Discussion**

Respondent argues that Grounds One, Seven, Twelve, Thirteen, and Fourteen are not cognizable; Grounds Two, Three, Five, and Six, as well as Ground Four, are procedurally defaulted; and Grounds Eight, Nine, Ten, and Eleven fail on the merits. (ECF No. 11 at 39, 47, 53, 54, 59).

**A.  Grounds One, Seven, Twelve, Thirteen, & Fourteen – Not Cognizable**

Grounds One, Seven, Twelve, Thirteen, and Fourteen challenge various aspects of Austin's state post-conviction proceedings, including the appellate court's decision that his Rule 26(B) application was untimely; the trial court's failure to address "every constitutional violation" in his state post-conviction petition; the application of *res judicata* to deny his post-conviction petition; the denial of oral arguments; and the notice he received of the appellate court's decision. (ECF No. 1, PageID #: 9-10, 22-25, 43-52). Respondent argues that each of these grounds are not cognizable on federal habeas review. (ECF No. 11 at 39-47).

"[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). This is "because the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Id*. (internal quotation marks omitted). "A finding of constitutional error in state collateral proceedings would not provide habeas relief because it would not result in the petitioner's release, reduction in time served, or in any way affect his detention." *O'Neal v. Kelly*, No. 1:12CV2580, 2013 WL 2443775, at *4 (N.D. Ohio June 4, 2013) (citing *Cress*, 484 F.3d at 853). Thus, "the writ is not the proper means to challenge collateral matters as opposed to the

underlying state conviction giving rise to the prisoner's incarceration." *Cress*, 484 F.3d at 853 (internal quotation marks omitted).

Here, Grounds One, Seven, Twelve, Thirteen, and Fourteen clearly address Austin's post-conviction proceedings rather than his underlying conviction. While Austin asserts that "[a] claim that a state court erred in applying its own procedural rules is cognizable on habeas review" (ECF No. 20 at 17), the cases he cites in support of this statement address the issue of procedural default and whether "a state procedural ruling is adequate," not whether a cognizable federal claim exists. *See, e.g.*, *Beard v. Kindler*, 558 U.S. 53, 61 (2009). And the Supreme Court has recognized that a petitioner's ability to show cause and prejudice as required to overcome procedural default "does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

Because Grounds One, Seven, Twelve, Thirteen, and Fourteen challenge state post-conviction proceedings which are "outside the scope of federal habeas corpus review," these grounds are not cognizable and should be dismissed. *Cress*, 484 F.3d at 853.

### B. Grounds Two, Three, Five, and Six – Procedurally Defaulted

Grounds Two, Three, Five, and Six raise claims of ineffective assistance of appellate counsel. (ECF No. 1, PageID #: 11-15, 18-22). Respondent argues that these claims are procedurally defaulted because Austin raised these claims "in an untimely 26(B) application and the Ohio Court of Appeals denied his application on that basis" and Austin has not established cause to overcome the procedural default. (ECF No. 11 at 47-48).

Austin argues that "[w]hile Ohio claims to allow delayed filings of the [Rule 26(b)] Application, it is only upon 'good cause shown,' which has never been defined" such that it is not

"firmly established" to justify a procedural default. (ECF No. 20 at 18). Austin asserts that while he was researching and writing his 26(b) application, he "was inexplicably removed from Trumbull Correctional Institution (TCI) where he was incarcerated per the order of the trial court and taken back to the Cuyahoga County Jail, where he was kept for thirty-three (33) days." (*Id.* at 19). He represents that the transfer occurred two weeks prior to the August 21, 2019 deadline for his application; "all of his legal papers, prior decisions, research and filings were kept" at TCI; and he was "bereft of any legal materials, filings or references" in the county jail. (*Id.* at 19-20). Austin argues that he has "provided more than ample explanation as to why his filing was tardy in his Motion for Leave to fill his App.R. 26(B) Application, which should fulfil the required standard of cause and prejudice." (*Id.* at 23).

> A claim is procedurally defaulted if:
>
> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Keller v. Genovese*, 65 F.4th 785, 789 (6th Cir. 2023). The first two elements are not in dispute as Austin failed to timely file his Rule 26(B) application and the appellate court denied it as untimely. (ECF No. 11-1 at Ex. 52).

Turning to the third element, contrary to Austin's argument and as he recognizes in his traverse, the Sixth Circuit has found that "[s]ince 1996, 'Ohio law has provided sufficient guidance on what constitutes a "good cause" for a late filing under Rule 26(B),' and 'the time constraints of Rule 26(b) have been firmly established and regularly followed.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012) (alterations omitted) (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th Cir. 2010)). Thus, "Rule26(B) is an adequate and independent ground on which to find procedural default." *Id.*

As to the fourth element, the question is whether Austin's assertion, supported by his affidavit in support of his Rule 26(B) application,[2] that his thirty-three-day transfer denied him access to the documents he needed to timely file his application is sufficient cause to overcome the procedural default. It is not. "Courts have held repeatedly . . . that a petitioner's pro se status, limited access to a prison law library, or ignorance of the law and state procedural rules do not constitute cause sufficient to excuse a procedural default." *Ervin v. Jarvis*, No. 16-4239, 2017 WL 5178932, *3 (6th Cir. 2017) (citing *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)). Austin attempts to argue his situation is more egregious than just limited access to legal material because the transfer by the trial court deprived him of access to the courts in general. (ECF No. 20 at 21). Certainly, "some interference by officials" may be sufficient cause to overcome procedural default. *Dickerson v. Warden, Ross Corr. Inst.*, 750 F. App'x 458, 460 (6th Cir. 2018) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). But the circumstances here do not warrant such a finding. As recognized by the appellate court in its denial of Austin's application, "154 days elapsed between the issuance of the appellate decision and the filing of the application. Subtracting the 33 days Austin spent in county jail and days in transit from the total elapsed time, Austin's application was still not filed within 90 days." (ECF No. 11-1 at Ex. 52). In other words, even if Austin's deadline for filing was tolled for the time he was away from his materials, it was still untimely and "the rejection of [Petitioner's] Rule 26(B) application was fairly attributable to him, rather than an external cause." *Spring v. Gray*, No. 22-3421, 2022 WL 16640878, at *4 (6th Cir. Oct. 12, 2022).

Because Grounds Two, Three, Five, and Six are procedurally defaulted and Austin has not shown cause to excuse the default, these grounds should be dismissed.

---

[2] *See* ECF No. 11-1 at Ex. 49.

### C.  Ground Four – Procedurally defaulted

In Ground Four, Austin argues that the "trial court erred to the prejudice of Appellant when it failed to adequately inform Appellant of the constitutional rights waived as a result of a guilty plea." (ECF No. 1 at PageID #: 15). Respondent argues Ground Four is procedurally defaulted because he "failed to raise this record based claim on direct appeal." (ECF No. 11 at 53). Although unclear, Austin seems to argue that his failure to raise this claim on direct appeal was the result of ineffective assistance of appellate counsel and that he has already shown cause to overcome procedural default with respect to his other grounds. (ECF No. 20 at 30).

As Respondent argues, Austin failed to raise this claim in his direct appeal such that it is now procedurally defaulted and Austin must show cause and prejudice to overcome that default. Austin's reliance on his alleged ineffective assistance of appellate counsel is insufficient to meet his burden. "A procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." *Wogensstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (cleaned up) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000)). As discussed above, Austin's ineffective assistance of appellate counsel claim is procedurally defaulted and he cannot show cause to overcome the default. Accordingly, Ground Four should also be dismissed as procedurally defaulted. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (petitioner could not rely on procedurally defaulted ineffective assistance of appellate counsel claim to establish cause to excuse procedural default of separate constitutional claim).

### D.  Grounds Eight, Nine, and Ten – Fail on the Merits

Grounds Eight, Nine, and Ten all arise from Austin's allegations that the State withheld

evidence, offered fabricated evidence, and solicited perjured testimony at trial which resulted in him entering a guilty plea. (ECF No. 1 at PageID #: 25-38). Specifically, Austin argues that a picture of a vehicle was altered so that it did not include a date and time stamp, and Detective Adkins testified that he took the picture on July 30, 2016 while the date stamp indicated it was taken on July 5, 2016. (*Id.* at PageID #: 30, 35-36).

Respondent argues that Austin's claim regarding the photo fails because "[h]e did not show that the time and date identified by the detective were indisputably false and that the government had removed the stamp;" "the statement was not material because the record established and Austin admitted that he drove the vehicle;" and "the record lacks any evidence that the prosecution knew that the date the detective indicated was false or that the photo introduced had been altered." (ECF No. 11 at 57). Respondent further argues that Austin's claim fails because he has not shown "that the government did not provide the photograph to him in discovery or that the photograph with a July 5, 2016 date stamp intact would have changed the outcome of the trial" because "[a]s the appellate court demonstrated, there was ample evidence that he regularly drove the vehicle." (*Id.* at 58). Accordingly, Respondent takes the position that "[t]he decision of the Ohio Court of Appeals was not contrary to clearly established Supreme Court precedent nor did it involve and [sic] unreasonable determination of the facts." (*Id.* at 58-59).

In reply, Austin seems to argue that the vehicle was still in his possession on July 5, 2016, such that the date stamp establishes that it was not his vehicle because his vehicle was not taken into police custody until July 30, 2019. (ECF No. 20 at 44-46). He further argues that the photo was taken before either a witness or the victim identified the vehicle. (*Id.* at 46). Austin argues that "[t]he false evidence and supporting testimony of Det. Adkins led Austin to accept the State's plea

offer due to, minimally, his inability to defend against the false evidence and perjury of the lead

detective of the investigation." (*Id.* at 49).

Austin raised his claims in his state post-conviction appeal. (ECF No. 11-1 at Ex. 41). The

state appellate court found as follows:

> {¶ 49} In his first assignment of error, Austin contends that the trial court erred in
> denying his petition without issuing findings of fact and conclusions of law that
> specifically addressed his claim that he was induced to enter his guilty pleas
> because the state presented "falsified evidence and testimony" at trial. Specifically,
> Austin claims that the state removed the date and time stamp from the photograph
> of the S-10 Chevy Blazer it introduced into evidence as State exhibits Nos. 86-94.[]
> He further claims that Detective Adkins falsely testified at trial that he took that
> photograph on July 30, 2016. Austin contends that after he had entered his guilty
> pleas, he obtained an unaltered copy of this photograph with the date and time
> stamp - July 5, 2016 at 15:39:16 - intact, which he claims to have submitted as
> Exhibit A to his petition.
>
> . . .
>
> {¶ 53} The only evidence Austin produced outside the trial record to support his
> claim that the state presented falsified evidence at trial was Exhibit A to his petition.
> In Exhibit A, Austin attached an email of a photograph of a vehicle. The quality of
> Exhibit A is very poor. It is impossible to determine from Exhibit A whether there
> is a date and time stamp on the photograph. Exhibit A does not establish that the
> state falsified any evidence at trial.
>
> {¶ 54} Moreover, even if a date and time stamp had been removed from the
> photographs of the S-10 Chevy Blazer introduced at trial, Austin has not shown that
> the state's introduction of these photographs without a date and time stamp would
> constitute grounds for relief under R.C. 2953.21. Austin admitted at trial that he
> regularly drove a black S-10 Chevy Blazer, that the vehicle depicted in State's
> exhibit No. 89 was, in fact, the vehicle he regularly drove, that the tan letterman-
> type jacket the police recovered during a search of that S-10 Chevy Blazer belonged
> to him and that he had worn the jacket recovered from the S-10 Chevy Blazer on
> the evening of June 28, 2016 when using the victim's debit card at a Huntington
> Bank ATM.
>
> {¶ 55} Accordingly, even if a date and time stamp had been removed from the
> photographs of the S-10 Chevy Blazer introduced into evidence at trial, Austin has
> not shown that this prejudiced him in any way much less that it rendered his guilty
> pleas unintelligent, unknowing or involuntary.

(ECF No. 11-1 at Ex. 44).

To prevail on habeas review, Austin must demonstrate that the state court unreasonably applied clearly established Supreme Court precedent or issued a decision that was contrary to said clearly established precedent. 28 U.S.C. § 2254(d). To do so, Petitioner relies on *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). (ECF No. 1 at PageID # 25-37).

"*Brady* generally bars prosecutors from suppressing evidence favorable to defendants" and "*Giglio* makes clear that prosecutors may not engage in the 'deliberate deception of a court and jurors [through] the presentation of known false evidence." *Davis v. Gross*, No. 18-5406, 2018 WL 8138536, at *2 (6th Cir. Sept. 10, 2018). To prevail under either claim, the evidence or statement at issue must be material. *Lacy v. Cheeks*, No. 22-1311, 2022 WL 18542505, at *7 (6th Cir. Aug. 25, 2022) (citing *Jells v. Mitchell*, 538 F.3d 478, 501-02 (6th Cir. 2008) and *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)). Evidence is deemed "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

The materiality issue is determinative here. Austin argues that the photo and testimony were material because based on the photo, a "nexus was made between Austin and the crimes that did not exist;" "[t]his would surely have had an effect on at least one juror;" and "Austin believed that he had no way to defend against the state's false photo and testimonial evidence linking him to the crimes, which resulted in his being compelled to accept a guilty plea." (ECF No. 20 at 52).

23

But as previously observed in this Court's order denying Austin's motion for the original photographs to be made a part of the record:

> The record establishes that Petitioner "admitted at trial that he regularly drove a black S-10 Chevy Blazer, that the vehicle depicted in State's exhibit No. 89 was, in fact, the vehicle he regularly drove, that the tan letterman-type jacket the police recovered during a search of that S-10 Chevy Blazer belonged to him and that he had worn the jacket recovered from the S-10 Chevy Blazer on the evening of June 28, 2016 when using the victim's debit card at a Huntington Bank ATM." (ECF No. 11-1, Exhibit 44, ⁋54, Opinion). Accordingly, even if the photographs were date-and-time stamped for July 5, 2016, rather than taken on July 30, 2016, that fact does not alter the identification of the Petitioner as the individual driving the S-10 Chevy Blazer identified in the photographs.

(ECF No. 26 at 7-8). It was further noted that "the photograph was only introduced to establish the Petitioner had driven the vehicle, but not to establish that he drove it on any particular date." (*Id.* at n.1). Thus, because the photo was only introduced to establish that Austin had driven the vehicle, not that he drove it on a particular date, and because Austin himself admitted to driving the vehicle, neither the date and time stamp nor Adkin's testimony regarding when he took the photo is material to the outcome of the case.

Accordingly, Austin has not shown that the state court unreasonably applied clearly established Supreme Court precedent or issued a decision that was contrary to said clearly established precedent. Grounds Eight, Nine, and Ten should be denied.

### E.  Ground Eleven – Fails on the Merits

In Ground Eleven, Austin asserts that his trial counsel was ineffective because he (1) failed to obtain trail camera footage of the crimes; (2) failed to share contradictory statements in police reports regarding the description of the suspect with Austin or present them at trial; and (3) failed to subpoena and call as witnesses Corporal James Ford and Jeremy Smith. (ECF No. 1 at PageID #: 39-41).

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-part test set out in *Strickland v. Washington*, 466 U.S. 688 (1984). First, the petitioner must demonstrate that, considering all the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 688. In so doing, the petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, the petitioner must show that the performance prejudiced his defense. *Id.* at 692. "In the guilty-plea context, a petitioner 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Fitzpatrick v. Robinson*, 723 F.3d 624, 634 (6th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

The Ohio Court of appeals reviewed Austin's claims in its review of his state post-conviction petition. First, it stated the applicable legal standard for the claims:

> As a general matter, to establish ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland* at 687-688, 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus; *see also State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 391 ("Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and second, that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial."). "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 60} A claim of ineffective assistance of counsel is waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992). Accordingly, where a defendant has entered a guilty plea, the defendant can prevail on an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the offenses at issue and would have instead insisted on proceeding with a trial. *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 30 (8th Dist.); *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992); *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

(ECF No. 11-1 at Ex. 44). The appellate court then reviewed and rejected Austin's arguments:

{¶ 64} In his third assignment of error, Austin contends that his trial counsel was ineffective because he "withheld" from Austin copies of two "case reports" prepared by Shaker Heights Police Corporal James Ford, the initial responding officer for the June 28, 2016 and July 15, 2016 incidents, and failed to introduce those case reports into evidence at trial. In his fourth assignment of error, Austin contends that he was denied effective assistance of counsel because trial counsel failed to call Corporal Ford and a former coworker, Jeremy Smith, to testify as witnesses at trial. Austin contends that Corporal Ford would have testified regarding the victim's initial description of the perpetrator - which he contends "did not match [Austin's] physical features in any way" - and that Jeremy Smith would have corroborated Austin's claim that he had had a prior relationship with the victim. Austin asserts that these omissions by his trial counsel compelled him to accept a plea agreement he would not have otherwise accepted and to enter guilty pleas he would not otherwise have entered. He asserts that if trial counsel had introduced Corporal Ford's case reports into evidence and had called Corporal Ford and Jeremy Smith as witnesses at trial, he "would have insisted on completing his trial."

**Case Reports and Corporal Ford's Testimony**

{¶ 65} Following a thorough review of the record, there is nothing in the materials submitted in support of Austin's petition (or otherwise in the record) to suggest that defense counsel was ineffective by "withholding exculpatory materials" from Austin, failing to introduce the case reports into evidence or failing to call Corporal Ford as a witness at trial.

{¶ 66} The case reports indicate that the victim had originally described the perpetrator as "a light complexed B/M, 5'10" to 6'0", thin about 125 lbs to 135 lbs, clean shaven." Austin contends that he is 5'7" and "dark-skinned" and that, at the time of his arrest on July 30, 2016, weighed 180 pounds and had a moustache and goatee.

{¶ 67} First, Austin presents no evidence in support of his claim that his trial counsel improperly "withheld" the case reports from him or otherwise failed to share the information contained in the case reports with him. In his affidavit submitted in support of his petition, Austin avers only that his trial counsel was ineffective (1) "for failing to investigate and produce exculpatory evidence at my trial proceedings in the form of the alleged victim's original description of her assailant, which was affirmed multiple times, that was not consistent with Petitioner's appearance" and (2) "for failing to call Corporate James Ford as a witness who would have testified regarding the description of the victim's assailant that was not consistent with that of Petitioner." He does not aver in his affidavit that trial counsel withheld the case reports from him. Conclusory allegations in a petition for postconviction relief, unsupported by evidence, are insufficient to warrant a hearing on the petition. *See, e.g.*, *State v. Sales*, 9th Dist. Summit No. 23498, 2007-Ohio-4136, ¶ 11; *State v. Scott*, 5th Stark No. 2006CA00090, 2006-0hio-4694, ¶ 45; *State v. Landrum*, 4th Dist. Ross No. 98 CA 2401, 1999 Ohio App. LEXIS 71, 31-32 (Jan. 11, 1999).

{¶ 68} The record also reflects that certain of the documents produced by the state in discovery were marked "counsel only" and that, therefore, copies of those documents could not be provided by defense counsel to Austin. We are unable to determine, based on the information before us, whether the case reports at issue were among those documents. The record reflects that Austin's second appointed attorney had attempted to get the "counsel only" designation removed from certain materials but that these attempts were thwarted after Austin allegedly left other documents related to the case "lying around" in the jail, which were found and turned in to the sheriff's department by another inmate.

{¶ 69} Second, Austin was in the middle of trial when he decided to plead guilty. Accordingly, it cannot be said what additional evidence defense counsel would, or would not, have introduced had Austin not entered his guilty pleas and the trial continued.

{¶ 70} Third, although Austin claims that "counsel failed to question [the victim] directly regarding the description of the person who allegedly robbed and burglarized her home" and that introduction of the case reports and testimony from Corporal Ford was, therefore, necessary to show discrepancies between the victim's initial description of the perpetrator and Austin's physical characteristics, the record reflects that defense counsel cross-examined the victim at length regarding her initial description of the perpetrator:

> Q [by defense counsel]. [The victim], do you remember the description you gave the police with respect to this person that came to your house?
>
> A. Would you say that again, please?

Q. Do you recall the description that you gave the police?

A. Well, they asked me some questions and best of my knowledge I answered them.

Q. Do you remember what you said?

A. I basically said someone came to my house and said that he was a representative of the water department and that someone else had been there earlier and that I had not been there and that he was going to be in trouble with his boss if he didn't do what he was supposed to do at that point, that he was new to the water department and he said he hadn't had a job before. And that was when he told me how old he was, or what he said.

***

Q. Do you recall giving them an age and description to the police?

A. I probably tried to go as close as I could have at him.

Q. Do you remember what you said to the police?

A. No. It was a while ago. I'm not sure. I had written it down.

***

Q. Do you recognize this document? * * * By reading that does that refresh your recollection as to the description you gave the police?

A. It's basically what I gave the police.

Q. But do you recall what you told the police if you look at the second paragraph?

A. This was a police report. So it's what at the time I wrote down and gave to the police.

Q. Now, does that refresh your recollection of what you told the police?

A. It's what I told the police.

Q. Do you recall seeing right there where you said he's a 19 year-old black male?

28

A. I didn't say he was 19.

Q. Didn't you write that on that particular statement?

A. Well, if I did it was an error because by then I knew that he was in his - that he was 30. He had told me that. So if I did write it wrong, you know, basically, you know, after these things had happened I was very shaken up and I tried to do what I could with them. I don't see on here that it says that he was 18. * * * It does say 19. But I never thought he was 19. So I probably made a mistake there.

Q. What about the height? You said about 5'9", 5'10", maybe?

A. Yeah, one of the policemen was asking me to compare to him. I'm not good - I told him I wasn't very good about how somebody - how tall somebody is.

{¶ 71} Defense counsel also cross-examined Shaker Heights Police Officer Kirk Falke and Detective Adkins regarding the victim's description of the perpetrator. Officer Falke testified that, at the time of the incident, Corporal Ford had provided a description of the alleged perpetrator - which he had reportedly received from the victim - to other Shaker Heights police officers, but that he could only recall that the perpetrator was allegedly a black male. Detective Adkins testified, with respect to the description of the alleged perpetrator the Shaker Heights police received from the victim:

Q. Now, [the victim] gave a written statement to the Shaker Heights Police Department, correct?

A. Correct.

Q. Do you recall that statement?

A. Roughly, in essence.

Q. If I showed it to you would it refresh your recollection?

A. Sure.

***

Q. What was the description that you learned through the course of your investigation of the individual that allegedly perpetrated these crimes?

29

A. Black male, roughly like late 20s to early 30s, small framed, 5'10" or less, thin with moustache, goatee mustache, always wearing a hat or do[-]rag so it was hard to tell –

Q. You never heard the person 19 years of age, black male about 5'9"?

A. I never heard that.

***

Q. But it's fair to say the original description was a black male, 5'10" in height, correct?

A. Roughly. Yes.[]

{¶ 72} Decisions such as what witnesses to call, what questions to ask and what exhibits to offer into evidence are generally considered tactical or strategic decisions that do not constitute ineffective assistance of counsel. *See, e.g.*, *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 5 N.E.3d 1185, ¶ 123; *State v. Clark*, 4th Dist. Highland No. 15CA12, 2016-Ohio-2705, ¶ 14; *cf. State v. Rollins*, 3d Dist. Paulding No. 11-05-08, 2006-Ohio-1879, ¶ 36.

{¶ 73} Corporal Ford was one of the initial responding officers who observed and interviewed the victim immediately after the June 28, 2016 and July 15, 2016 incidents. Although Corporal Ford's testimony regarding the victim's initial description of the perpetrator may have been favorable to Austin, had Corporal Ford been called to testify, other aspects of his testimony would have likely been potentially damaging to Austin's defense. Likewise, although the victim's description of the perpetrator as set forth in the case reports may have been favorable to Austin, the case reports also contain other information that could have reasonably been expected to adversely impact Austin's case. Indeed, when the state was seeking admission of its exhibits into evidence, defense counsel took care to ensure that no police reports were among the exhibits the state sought to have admitted. Accordingly, defense counsel could have reasonably determined, as a matter of defense strategy, not to seek admission of the case reports into evidence and not to call Corporal Ford as a defense witness - particularly given that defense counsel had already examined the victim and other witnesses regarding the discrepancies between the victim's initial description of the perpetrator and Austin's physical features. In short, there is nothing in the record to indicate that Attorney Johnson's representation of Austin fell below an objective standard of reasonableness based on his failure to introduce the case reports into evidence or to call Corporal Ford as a witness at trial.

{¶ 74} Further, even assuming trial counsel's representation of Austin was in some way deficient as it relates to the case reports or the testimony of Corporal Ford,

Austin has not shown that he was prejudiced by his counsel's performance or that it rendered his guilty pleas unknowing, unintelligent or involuntary.

{¶ 75} The victim's initial description of the perpetrator was not the only evidence that linked Austin to the offenses with which he had been charged. The record reflects that the victim consistently told police throughout their investigation that the "same black male" had been the perpetrator in all three incidents. The victim identified Austin in court as the man who had robbed her in all three incidents.

{¶ 76} In addition, Detective Adkins testified that witness Douglas Curfman identified Austin in a photo lineup as the man he had seen on Palmerston Road on June 28, 2016 wearing a yellow Rhulin hard hat and yellow vest. Detective Adkins further testified that a tan letterman-style jacket, found during a search of the black 2000 S-10 Chevy Blazer that was driven frequently by Austin, matched the jacket worn by the individual who had used the victim's debit card on June 28, 2016, as captured in Huntington Bank ATM camera footage. The trail camera the police installed on the victim's property captured an image of Austin wearing a black T-shirt, black do-rag, clear plastic safety glasses and blue nitrile gloves standing next to the victim's Jaguar on July 29, 2016. And when police apprehended Austin the following day, he was driving the victim's vehicle - albeit without its distinctive rear license plate.

{¶ 77} Further, Austin readily admitted that he had been at the victim's residence on June 28, 2016, July 15, 2016 and July 29, 2016 - the dates of each of the alleged incidents. As detailed above, Austin told police that he took the victim's debit card without her permission and used the debit card to withdraw $400 from the victim's account on June 28, 2016, that he returned to the victim's residence on July 15, 2016 and that he entered an open door at the victim's residence on July 29, 2016 and took cash from the victim's purse and her car keys without her consent.

{¶ 78} During his trial testimony, Austin again acknowledged that he had been at the victim's residence on the dates of each of the alleged incidents. Austin admitted that he had used the victim's debit card at a Huntington Bank ATM on the evening of June 28, 2016 and that he had taken the victim's Jaguar on July 29, 2016.[]

**Jeremy Smith**

{¶ 79} Austin also claims that he was denied the effective assistance of counsel due to Attorney Johnson's failure to investigate a potential witness, Jeremy Smith, and to call Jeremy Smith as a witness at trial.

{¶ 80} Although defense counsel is often given the "benefit of the doubt" in matters of trial strategy, "'a failure to investigate, if true, is not a matter of trial tactics, but violates an essential duty owed to clients.'" *State v. Bell*, 8th Dist. Cuyahoga No. 105000, 2017-Ohio-7168, ¶ 34, quoting *State v. Schlosser*, 2d Dist. Montgomery Nos. 17192 and 17193, 1999 Ohio App. LEXIS 2386, 24 (May 28, 1999). Defense

31

counsel has a duty to conduct a reasonable investigation or to make a reasonable decision that a particular investigation is not necessary. *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d at 146, 538 N.E.2d373.

{¶ 81} Here, however, Austin has offered nothing to indicate that Attorney Johnson failed to adequately investigate the case or was otherwise deficient in his representation of Austin based on his failure to call Jeremy Smith as a witness at trial.

{¶ 82} The only evidence Austin presented in support of this claim was an affidavit from Jeremy Smith. In his affidavit, dated May 15, 2018, Jeremy Smith averred that he had worked with Austin at Food Plus, a corner grocery store, from 2014 to mid-2016. Jeremy Smith stated that he had seen the victim with Austin and his daughter prior to the incidents and that she was "one of the women who came to the store numerous of [sic] times to see and bring [Austin] money." Jeremy Smith further averred that he had called Austin's sister and told her what he knew about the victim and that she had directed him to call the Shaker Heights police and Austin's lawyer and tell them what he knew. Smith averred that he called and spoke with a Shaker Heights police detective (but could not remember his name), that he spoke with Austin's first two attorneys (but that they no longer represented Austin by the time of his trial) and that he had called Austin's third attorney, Attorney Johnson, "but could not reach him." Jeremy Smith averred that he later learned from Austin's sister that Austin's trial "was over" and that Austin had pled guilty.

{¶ 83} In his petition, Austin asserts that he had given "his counsel"[] Jeremy Smith's name as someone "who would support and corroborate [his] relationship with the alleged victim," that he had "urge[d] counsel, throughout representation, to contact Mr. Smith because of the valuable information he had to offer" and that he had provided counsel with "a reliable phone number and address of work where counsel could meet with Mr. Smith." Austin further asserts in his petition that Jeremy Smith "left multiple messages for [Attorney Johnson] informing him of the information he had to offer" and that trial counsel had advised Austin that the trial court "would not allow Mr. Smith to testify 'due to the fact that he's an ex-coworker.'" In his appellate brief, Austin also asserts that his trial counsel had falsely represented to Austin that he "had scheduled a time and place to meet with Mr. Smith." There is, however, no evidentiary support for any of these assertions in Jeremy Smith's affidavit, Austin's affidavit or any of the other materials Austin submitted with his petition. A petitioner's mere assertions, unsupported by affidavits or other evidence, are "'legally insufficient to establish operative facts.'" *Quinn*, 2017-Ohio-8107, 98 N.E.3d 1184, at, 37.

{¶ 84} Jeremy Smith's affidavit simply states that he attempted to contact Attorney Johnson to provide information allegedly relevant to Austin's case and could not reach him. There is nothing in the affidavit to suggest that Attorney Johnson's performance fell below an objective standard of reasonableness. Attorney Johnson

could not have provided ineffective assistance by failing to investigate and call to testify a witness he did not know existed.

{¶ 85} Accordingly, we cannot say that the trial court abused its discretion in concluding that Austin did not submit evidence of sufficient operative facts to establish substantive grounds for relief based on counsel's alleged failure to introduce the case reports into evidence or to call Corporal Ford or Jeremy Smith as witnesses at trial.

{¶ 86} Austin's third and fourth assignments of error are overruled.

**Trail Camera Footage**

{¶ 87} In his fifth and sixth assignments of error, Austin contends that he was denied effective assistance of counsel because his trial counsel failed to "investigate, obtain, and present [as] exculpatory evidence" additional footage from the trail camera the police had installed at the victim's residence. Austin asserts that "[a]lthough photograph[s] extracted from the video surveillance footage [were] submitted into evidence as part of the discovery, the actual surveillance footage itself was withheld from the defense." Specifically, Austin contends that the state failed to produce to the defense additional video surveillance footage downloaded from the trail camera relating to (1) the image of the black female who trespassed on the victim's property on July 25, 2016 and (2) the image of Austin standing next to the victim's Jaguar on July 29, 2016. Austin argues that defense counsel was deficient for failing to obtain this additional video surveillance footage and introduce it into evidence at trial.

{¶ 88} Austin asserts that the female captured on the surveillance camera on July 25, 2016 was not Bobbie Smith and that the defense could have established that fact if all of the video surveillance footage from that date had been provided to the defense.[] Although Austin admits that Bobbie Smith's arrest "was not directly connected to [his] charges," he contends the additional footage could have been used at trial "to expose the [Shaker Heights Police Department's] malfeasance intent."

{¶ 89} With respect to the trail camera image of Austin captured on July 29, 2016, Austin asserts in his petition:

> The state withheld the 7 /29/16 surveillance footage because of the following:
>
> 1) it shows that Petitioner not only had permission, but an actual purpose for leaving with [the victim's] vehicle. After unlocking the car door, Petitioner did not flee from the residence, as falsely portrayed by Det. Adkins. He proceeded to reach into the car for the latch to pop open the hood and proceeded to check the oil and anti-

freeze before taking the car to get additional oil and anti-freeze as instructed by [the victim];

2) [The victim] claimed that the suspect stole her I-phone, I-pad pro, and Apple MacPro. Yet, just as in the photo released to the media, Exhibit J, supra), the surveillance video shows that the Petitioner not knowing that he was being recorded did not have on his person any of the items that [the victim] said were taken. The photo showed that Petitioner's hands were in clear view of the trail camera, with the photo taken on 7/29/16 showing Petitioner's hands were empty as he walked to the car, unlocked it, and performed the maintenance checks described previously. The Petitioner also carried no bag, backpack, or anything else in which he could have concealed the items. His movements while performing the maintenance checks would have revealed anything that could have been concealed on his person, given the size and quantity of the items that were to have been taken;

3) The Petitioner actions in the video footage were not consistent with someone who had just performed home invasion, aggravated burglary and aggravated robbery with weapon, allegedly leaving victim taped and tied up in her own basement. The actions reflect those of someone who is calm and comfortable while being on the property and aware of the issues regarding [the victim's] vehicle.*** If Defendant would have been provided the entirety of the video footage, the video would have been exculpatory as it was contradictory to the state's case-in-chief.

{¶ 90} There is nothing in the materials Austin submitted with his petition to support his claim that additional "exculpatory" surveillance footage from the trail camera even existed or, if it existed, that it shows what Austin claims it shows. In support of his claim that such additional surveillance footage exists, Austin points only to Detective Adkins' statement in his affidavit for a search warrant of Williams' residence that the trail camera was "programmed to take a still photograph and short video clip based on motion in front of the camera" and Detective Adkins' statements in his supplemental investigation report that (1) he had "confirmed that the camera would take short video clips, still photographs and night vision photographs when the camera is motion-activated," (2) "[e]ach day, [he] checked the images and videos on the memory cards" and (3) "[a]ll images captured were uploaded to [the] DMS server." This was insufficient to entitle Austin to a hearing under R.C. 2953.21. *See, e.g.*, *State v. Ibrahim*, 10th Dist. Franklin No. 14AP-355, 2014-Ohio-5307, ¶ 22 (appellant's self-serving affidavit, in which he averred that security camera footage would have corroborated his trial testimony that he was not inside apartment robbing people, was "legally insufficient to establish operative facts" with regard to his claim that trial counsel was

ineffective for failing to secure the security camera footage, where appellant had never viewed the footage).

{¶ 91} Further, the record reflects that, to the extent that there might have been additional trail camera footage that was helpful to Austin's case that was not produced to the defense, Austin was well aware of that fact at the time of trial and, therefore, could have raised his claims relating to the trail camera footage at trial or during his direct appeal. As Austin testified during his direct examination:

> Q. So you say you didn't try to run in the car, you didn't speed away?

> A. No. The thing about that, even with the car, it's kind of a little - I wouldn't say funny, given the situation, but the fact that they have a photo of me getting in this car, it's a few things about that that just if you pay close attention to you won't see right.

> Number one, that day I'm supposed to had allegedly stole the iPhone, iPad, and two laptops or something like that. But clearly even that day I had the keys, clearly you can see me unlocking the door. You see both of my hands. At some point in time you have to see these devices. Most likely when you got your briefcase and you go to get in your car, what would you do with your briefcase?

> ***

> Q. That day of the picture, you are saying there should have been other pictures with you with items in your hands?

> A. Yes. That's what I was going to get to. Not only should there be other pictures with items in my hand, to my understanding that camera also take footage, it also records. The fact that it have just one picture, if it actually records it also show me doing a number of other things in the driveway. For instance that day from the last time I was there, like I say, I put the hammock up. I'm not really too good with it. I had to put the hammock up. Again, that requires me coming back and forth up the driveway in order to get the tools to get it. Also one of reasons for me taking the car, that camera would show me popping the hood of the car because, like I said, it's motion detective. So I pop the hood of the car because she let me know that it was smoking or something like that and antifreeze and oil.

> I took the car, she gave me the money to get the antifreeze and oil and also to wash the car. By me working at the store on Glendale or used to work at the store on Glendale, I could go and just get the stuff for free. I had a mechanic that can possibly look at the car that stayed up the street in that area.

35

{¶ 92} Finally, Austin has presented no evidence, beyond the self-serving, conclusory allegations of his affidavit, to support his claim that were it not for defense counsel's failure to obtain and present this alleged additional surveillance footage at trial, he would not have entered his guilty pleas. As detailed above, there was an abundance of evidence, including admissions by Austin himself, that could have reasonably supported the jury's finding, beyond a reasonable doubt, that Austin was guilty of the offenses with which he had been charged. At the time he entered his guilty pleas, Austin was facing 22 counts, including nine first-degree felony charges. Although some of charges may have merged for sentencing, if Austin had been convicted of all (or even just some) of the many offenses with which he had charged, he could have been facing a very long prison sentence. Instead, pursuant to the terms of his plea agreement, he received a mandatory eight-year sentence.

{¶ 93} Accordingly, the trial court did not abuse its discretion in denying Austin's petition for postconviction relief without a hearing. Austin's fifth and sixth assignments of error are overruled.

(ECF No. 11-1 at Ex. 44).

Because the state appellate court addressed the claims Austin now raises, he must demonstrate that the state appellate court's application of the law or interpretation of the facts was unreasonable. *See* § 2254(d)(1). Respondent argues that Austin cannot meet his burden because "[t]he appellate court reasonably determined that counsel was not deficient for failing to call Corporal Ford or Jeremy Smith, offer case reports into evidence or obtain additional surveillance footage" and Austin failed to demonstrate "that there was a reasonable probability that, but for counsel's inaction, he would not have pleaded guilty and would have insisted on resuming his trial." (ECF No. 11 at 74).

In response, Petitioner seems to argue that the state appellate court's decision was unreasonable as to both the facts and the law. (ECF No. 20 at 55-101). As to counsel's failure to present Ford's reports or testimony, Austin argues that (1) the appellate court's determination that "it cannot be said what additional evidence defense counsel would, or would not have introduced" was an unreasonable determination of the facts and (2) Ford's reports and/or testimony would have

highlighted inconsistencies in descriptions of the suspect. (*Id.* at 56-64). Austin asserts that his claim that his counsel never contacted Smith is supported by Smith's affidavit, contrary to the state appellate court's decision. (*Id.* at 72). Concerning the trail camera footage, Austin asserts that "[i]f Austin had been provided the entirety of the video footage, the video would have been exculpatory and material as it was contradictory to the state's case-in-chief. However, his trial counsel made no effort to investigate and secure the 'surveillance video.'" (*Id.* at 88). As to prejudice, Austin asserts that "[h]ad he been provided the effective assistance of counsel through the presentation of the evidence above, Austin would have insisted on completing his trial and relied [on] the jury to 'have produced a just result.'" (*Id.* at 83).

Based on a review of the record, Petitioner's arguments fail. Concerning counsel's failure to call Ford, while Austin is correct that counsel indicated there were no other defense witnesses beyond Petitioner, (ECF No. 11-4 at 489), Petitioner entered his guilty plea before the defense rested such that there is no way to know whether counsel would have maintained this position. Further, as the appellate court observed, while Ford's testimony and the police reports "may have been favorable to Austin," they also may have damaged his defense such that "defense counsel could have reasonably determined, as a matter of defense strategy, not to seek admission of the case reports into evidence and not to call Corporal Ford as a defense witness." (ECF No. 11-1 at Ex. 44, ¶ 73).

Turning to Smith, the appellate court observed that Smith's affidavit "simply states that he attempted to contact Attorney Johnson to provide information allegedly relevant to Austin's case and could not reach him. There is nothing in the affidavit to suggest that Attorney Johnson's performance fell below an objective standard of reasonableness." (ECF No. 11-1 at Ex. 44, ¶ 84). This is an accurate description of the affidavit, which indicates Smith left messages for Austin's

prior attorneys but "called Mr. Johnson but could not reach him." (*Id.* at Ex. 29, Ex. J). Thus, the state court did not reach an unreasonable determination concerning the facts.

Concerning the trail camera footage, the appellate court observed that there was nothing to support Austin's claim that "additional 'exculpatory' surveillance footage from the trail camera even existed or, if it existed, that it shows what Austin claims it shows" and Austin presented "no evidence, beyond the self-serving, conclusory allegations of his affidavit, to support his claim that were it not for defense counsel's failure to obtain and present this alleged additional surveillance footage at trial, he would not have entered his guilty pleas." (ECF No. 11-1 at Ex. 44, ¶¶ 90-92). The appellate court noted that "there was an abundance of evidence, including admissions by Austin himself, that could have reasonably supported the jury's finding, beyond a reasonable doubt, that Austin was guilty of the offenses with which he had been charged." (*Id.*). The Court cannot say that this was an unreasonable determination of the facts or application of the law. *See Hodges v. Colson*, 727 F.3d 517, 538 (6th Cir. 2013) (where the alleged error of counsel "involves failure to investigate or discover exculpatory information, 'the determination of whether the error "prejudiced" the defendant will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial.") (quoting *Hill*, 474 U.S. at 59).

Overall, the state appellate court properly applied the *Strickland* standard to Petitioner's claims. As Petitioner has not demonstrated how the appellate court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law," his claims fail. *Bobby v. Dixon*, 565 U.S. 23, 24 (2011). Accordingly, Ground Eleven should be dismissed as meritless.

### F.  Summary

To summarize, Grounds One, Seven, Twelve, Thirteen, and Fourteen are not cognizable;

Grounds Two, Three, Four, Five, and Six are procedurally defaulted; and Grounds Eight, Nine, Ten, and Eleven fail on the merits. Accordingly, I recommend that the Court deny Austin's petition.

## VII. Certificate of Appealability

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B. Analysis

Austin's grounds for relief are procedurally defaulted, not cognizable, or meritless. If the Court accepts the foregoing recommendation, then Austin has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, it is recommended that the Court not issue a certificate of appealability.

## VIII. Recommendation

Austin's claims are all non-cognizable, procedurally defaulted, or meritless. Thus, it is recommended that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: February 12, 2024

_s/Carmen E. Henderson_____
Carmen E. Henderson
United States Magistrate Judge